IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UTILITY TRAILER SALES OF KANSAS CITY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-2023-JPO |
| ) | |
| MAC TRAILER MANUFACTURING, INC. ) and ) | |
| SUMMIT TRUCK EQUIPMENT, LLC, ) | |
| ) | |
| Defendants. ) | |

## <u>**MEMORANDUM AND ORDER**</u>

This is an unfair competition case. It arises out of a dealer agreement that granted plaintiff, Utility Trailer Sales of Kansas City, Inc. ("Utility Trailer"), a license to sell trailers manufactured by defendant MAC Trailer Manufacturing, Inc. ("MAC"). Utility Trailer brought claims against MAC for breach of contract, tortious interference with a prospective business expectancy or relationship, and violation of the Kansas Dealers and Manufacturers Licensing Act ("KDMLA"), K.S.A. § 8-2401 et seq. Utility Trailer also brought claims against a second defendant, Summit Truck Equipment, LLC ("Summit"), for tortious interference with an existing contract and tortious interference with a prospective business expectancy or relationship.

Following seven days of trial, the jury returned a verdict in favor of Utility Trailer on the claims of tortious interference with a prospective business expectancy or relationship against both MAC and Summit. The jury awarded Utility Trailer $87,500 in actual damages

against MAC and $37,500 in actual damages against Summit (doc. 247). The jury rejected Utility Trailer's remaining claims and also found that no punitive damages should be awarded. Judgment has been entered accordingly (doc. 249).

The case is now before the court on the renewed motion of MAC and Summit (together, "defendants") for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b), on Utility Trailer's claims of tortious interference with a prospective business expectancy or relationship **(doc. 250)**. Also before the court is Utility Trailer's renewed Rule 50(b) motion for judgment as a matter of law on its KDMLA claim, and motion for new trial pursuant to Fed. R. Civ. P. 59(a)(1) on its claims of breach of contract and tortious interference with contract **(doc. 252)**. For the reasons discussed below, the court grants defendants' renewed motion for judgment as a matter of law and denies Utility Trailer's renewed motion for judgment as a matter of law and motion for new trial.

## I.  Background and Uncontroverted Facts

Utility Trailer is a Kansas corporation with its principal place of business in Kansas City, Kansas. It sells specialized trailers and related equipment for use with highway tractor-trailer rigs; it also provides maintenance and service on such trailers and equipment. Utility is a wholly-owned subsidiary of Kansas City Peterbilt, Inc., which sells and services the tractor side of such tractor-trailer rigs, mainly as a dealer under the *Peterbilt* brand.

MAC is an Ohio corporation with its principal place of business in Ohio. MAC manufactures and sells trailers and related equipment. It sells it products directly and also through dealers such as Utility Trailer.

Summit is a Colorado company and is wholly-owned by Transwest, Inc. Summit operates under a fictitious name registered with the state of Missouri, Transwest Trailers, LLC. Transwest Trailers, LLC, is a Colorado company that is also wholly-owned by Transwest, Inc. Summit has a business location in the Kansas City metropolitan area from which it markets and sells trailers and related equipment.

On or about November 15, 2000, Utility Trailer and MAC entered into a dealer agreement (the "Dealer Agreement"), granting Utility Trailer a non-exclusive license and right to sell trailers and other products manufactured by MAC.[1] The Dealer Agreement set a geographic area consisting of portions of eastern Kansas and western Missouri (including the Kansas City metropolitan area) in which Utility Trailer would be the sole dealer authorized or licensed by MAC. Significantly, the Dealer Agreement did not restrict MAC, or any MAC dealer outside Utility Trailer's territory, from selling MAC products in Utility's designated area. Both MAC and Utility had the right to terminate the Dealer Agreement upon not less than thirty days written notice. After execution of the Dealer Agreement, Utility Trailer began selling and servicing MAC trailers.

On April 14, 2008, MAC sent Utility Trailer a letter stating that it "reviewed the Kansas marketplace, its market potential incorporating the full MAC Trailer product line and have regretfully come to the conclusion that we as MAC Trailer must pursue different

---

[1]Trial Exh. 1.

avenues in a more aggressive manner."[2]  MAC purported to terminate the dealership arrangement "effective immediately."[3]  Utility Trailer protested the termination and filed an administrative complaint with the Kansas Director of Vehicles.  On May 9, 2008, MAC sent Utility Trailer a letter "revoking" the cancellation of the Dealer Agreement.

Summit began marketing and selling trailers and related equipment in the Kansas City metropolitan area in late 2007.  It began selling MAC trailers in 2008 when MAC authorized Transwest Trailers, LLC, as a MAC dealer.[4]  On June 20, 2008, Summit filed an application for registration of a foreign limited liability company with the state of Missouri.[5]  The application stated that the purpose of the company was, among other things, to sell and service MAC trailers.  It listed Summit's office as located in Kansas City, Missouri.  Likewise, on or about July 31, 2008, Summit filed an application for a motor vehicle dealer license with the state of Missouri, stating that it was in the business of selling MAC trailers, among other things.[6]  With its application, it included a letter from MAC dated July 15, 2008, recognizing Transwest Trailers, LLC/Summit as an authorized MAC dealer in Missouri.[7]

---

[2]Trial Exh. 2.

[3]*Id.*

[4]Both George Eidsness and David Bowe testified that Transwest Trailers, LLC, is a fictitious name for Summit.

[5]Trial Exh. 207.

[6]Trial Exh. 300.

[7]George Eidsness, the president and owner of Transwest, Inc., Transwest Trailers, LLC, and Summit, testified that the reference to the Missouri dealership pertained to Summit,

Utility Trailer filed this lawsuit against MAC and Summit on December 19, 2008, in state court. The lawsuit was timely removed to federal court on January 16, 2009.

On October 30, 2009, MAC sent a second termination letter to Utility Trailer. This letter specifically referenced the termination provision in the Dealer Agreement and stated that, "[e]ffective 30 days from the date of this letter, Utility will no longer be treated as a MAC dealership."[8] Thus, the Dealer Agreement was effectively terminated November 29, 2009.

## II. Legal Standards

A post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) is appropriate only if the evidence, viewed in a light most favorable to the nonmoving party, "points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."[9] Such motions should be "cautiously and sparingly granted."[10] In determining whether judgment as a matter of law is proper, the court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury.[11]

---

not Transwest Trailers, LLC. Doc. 210 at 58–59.

[8]Trial Exh. 3.

[9]*Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002) (quoting *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1991)).

[10]*Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2007) (quoting *Neese v. Schuckman*, 98 F.3d 542, 548 (10th Cir. 1996)).

[11]*Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001) (citing *Lockard v. Pizza Hut*, 162 F.3d 1062, 1068 (10th Cir. 1998)).

Rather, the court must affirm the jury verdict if, viewing the record in a light most favorable to the nonmoving party, it contains evidence upon which the jury could have properly returned a verdict for the nonmoving party.[12]  Conversely, though, the court must enter judgment as a matter of law for the movant if "'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law.'"[13]

In considering a motion for a new trial, the court may grant a new trial on all or some of the issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[14]  Motions for new trial are committed to the sound discretion of the trial court.[15]  They are generally regarded with disfavor and should only be granted with great caution.[16]  A "party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence."[17]  While the court has the discretion to grant a new trial if a verdict

---

[12]*Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1219–20 (10th Cir. 1999) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996)).

[13]*Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (quoting *Harolds*, 82 F.3d at 1546–47).

[14]Fed. R. Civ. P. 59(a)(1)(A).

[15]*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[16]*Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).

[17]*White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir. 1983).

appears to be against the weight of the evidence,[18] as a general rule the court must be mindful not to usurp the role of the jury and must exercise its discretionary power only in exceptional circumstances.[19] "A new trial is not warranted simply because the court would have reached a different verdict."[20] A party seeking to set aside a jury verdict "bear[s] the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence."[21]

### III. Defendants' Renewed Motion for Judgment as a Matter of Law

As noted above, the jury returned a verdict and awarded damages in favor of Utility Trailer on its separate claims against MAC and Summit for tortious interference with a prospective business expectancy or relationship. "Tortious interference with a prospective business advantage or relationship seeks to protect future or potential contractual relations and is predicated on malicious conduct by a defendant."[22] As set forth in Jury Instruction Nos. 14 and 14A, under Kansas law Utility Trailer had the burden of proving the following elements of tortious interference with a prospective business expectancy or relationship:

---

[18]*Getter v. Wal-Mart Stores, Inc.*, 66 F.3d 1119, 1125 (10th Cir. 1995).

[19]*Rivera v. Rivera*, 262 F. Supp. 2d 1217, 1230–31 (D. Kan. 2003) (citation omitted).

[20]*Hillman v. U.S. Postal Serv.*, 169 F. Supp. 2d 1218, 1222 (D. Kan. 2001) (citation omitted); *accord Boyce v. Bd. of County Comm'rs*, 857 F. Supp. 794, 797 (D. Kan. 1994).

[21]*Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998) (internal quotations and citation omitted).

[22]*M West, Inc. v. Oak Park Mall, L.L.C.*, No. 102,105, 2010 WL 2490948, at *15 (Kan. Ct. App. June 18, 2010).

1.      The existence of a business relationship or expectancy with the probability of future economic benefit to Utility Trailer;

2.      Knowledge of the relationship or expectancy by the defendant;

3.      That, except for the defendant's conduct, Utility Trailer was reasonably certain to have continued the relationship or realized the expectancy;

4.      Intentional conduct by the defendant;

5.      The absence of justification on the part of the defendant;

6.      The absence of privilege on the part of the defendant as a competitor of Utility Trailer;

7.      The defendant's actions were "malicious," which in this particular context means acting with actual evil-mindedness or specific intent to injure; and

8.      Damages were suffered by Utility Trailer as a result of the defendant's conduct.[23]

Defendants argue that judgment as a matter of law should be entered in their favor on Utility Trailer's claims of tortious interference with a prospective business expectancy or relationship because the jury's verdict on these claims was not supported by sufficient evidence at trial. Defendants raise three arguments in this regard: (1) the evidence could not support a finding that defendants acted with malice; (2) the evidence could not support a

---

[23]*See* PIK-Civil 4th 124.92; *DP-Tek, Inc. v. AT&T Global Info. Solutions Co.*, 100 F.3d 828, 836 (10th Cir. 1996); *L&M Enters., Inc. v. BEI Sensors & Sys., Co.*, 231 F.3d 1284, 1288 (10th Cir. 2000); *Turner v. Halliburton*, 722 P.2d 1106, 1115–17 (Kan. 1986). The parties do not dispute that the court correctly instructed the jury on the law.

finding that defendants were not protected from liability by the so-called "competitor privilege;" and (3) the evidence could not support a finding that MAC committed an independent tort that caused damage to Utility Trailer beyond that asserted in Utility Trailer's breach of contract claim. Additionally, defendants argue that the jury's damage awards were not supported by the evidence. The court will address each of defendants' arguments in turn.

A.    Evidence of Malice

To establish that defendants acted with malice, Utility Trailer was required to present evidence from which a reasonable juror could conclude that defendants acted with "actual evil-mindedness or specific intent to injure."[24] The evidence relied upon by Utility Trailer to establish actual malice is detailed in its brief and is construed here "in the best possible light from [Utility Trailer's] standpoint."[25]

1.    Evidence that MAC Acted with Malice

According to Utility Trailer, evidence presented at trial demonstrated MAC's "premeditated intention to do harm to Utility Trailer"[26] by destroying, hindering, or undermining Utility Trailer's contractual rights to sell MAC products in its designated dealership area. Defendants respond that the evidence, while perhaps establishing that MAC

---

[24]*Turner*, 722 P.2d at 1113 (quoting *Munsell v. Ideal Food Stores*, 494 P.2d 1063, 1073 (Kan. 1972)), *adopted in L&M Enters.*, 231 F.3d at 1288.

[25]*Id.*

[26]Doc. 253 at 6.

was indifferent toward Utility Trailer's future success, did not show an intent to injure Utility Trailer.

Whether Utility Trailer established that MAC acted with evil-mindedness or specific intent to injure is a close call. The court can certainly envision a reasonable juror determining that this element of tortious interference was not satisfied. However, it is not for the court to weigh the evidence nor substitute its judgment for that of the jury. As noted above, the entry of judgment as a matter of law is appropriate only if the evidence points "but one way"—against the jury verdict. In the court's view, sufficient evidence was presented at trial from which the jury could have found the existence of malice on MAC's part.

First, the evidence demonstrated that MAC spoke with Transwest Trailers, LLC, about establishing a MAC dealership in the Kansas City metropolitan area (Utility Trailer's dealership area) in early 2008 while the Dealer Agreement between MAC and Utility Trailer was still in effect. Mike Conny, the president and owner of MAC, testified that Steven Hallas, MAC's director of sales for the western region, approached Transwest Trailers, LLC, in February 2008 about becoming a MAC dealer. Mr. Hallas confirmed this in his testimony. In an email dated March 18, 2008, Mr. Hallas wrote Ryan Eidsness of Transwest Trailers, LLC/Summit[27] asking for "a firm date on the KC store."[28] Mr. Conny testified that

---

[27]Although Ryan Eidsness testified that he was employed by one of the Transwest entities (but could not recall which one), documentary evidence indicates that he frequently acted on behalf of Summit. *See* Trial Exh. 229 (submitting Summit's invoice for the Missouri Dump Truck Association convention to MAC); Trial Exh. 258 (emailing MAC representatives to thank them for taking an interest in "Transwest/Summit"); Trial Exh. 260 (submitting Summit's application for the Missouri Dump Truck Association convention).

Mr. Hallas was referring to a store that Summit planned to open in Kansas City. MAC then sent a letter dated July 15, 2008, to Mr. R. Eidsness, which included language that could be construed as recognizing Summit as an authorized MAC dealer in Missouri.[29] While the letter did not address Summit's dealership area, the letter was submitted with Summit's application for a motor vehicle dealer license for Summit's facility located in Kansas City, Missouri.[30] Viewing this evidence in Utility Trailer's favor, the jury could reasonably infer that MAC authorized Summit to establish a dealership and sell MAC products in a geographic area that overlapped with the exclusive dealership area MAC granted to Utility Trailer in the Dealer Agreement. From this, it was not unreasonable for the jury to conclude that MAC intended to injure Utility Trailer's business.

Second, the evidence demonstrated that MAC helped to establish Summit's presence as a MAC dealer in the Kansas City market. Ron Rowland, a former salesperson for Summit and Transwest Trailers, LLC, testified that when he was selling trailers for Summit in the Kansas City area, MAC provided him with sales leads. Documentary evidence further indicated a MAC salesperson came to Kansas City in July 2008 to meet with Mr.

A reasonable juror therefore could easily conclude that Mr. R. Eidsness was a representative of Summit. Further, Mr. G. Eidsness testified that Summit was doing business in Kansas City under the fictitious name of Transwest Trailers, LLC. Doc. 211 at 94. Thus, a reasonable juror could construe actions by Transwest Trailers, LLC, as actions by Summit.

[28]Trial Exh. 222.

[29]Trial Exh. 300.

[30]*Id.*

R. Eidsness,[31] and testimony from Brock Elison of Transwest Trailers, LLC, indicated Mr.

R. Eidsness made sales calls in the Kansas City area that month.  On September 10, 2008,

a MAC salesperson sent Mr. R. Eidsness a list of MAC trailers that "might work good in

KC."[32]  Other testimony and documents submitted at trial indicate that MAC reimbursed

Summit for advertising by Summit of MAC trailers at the Missouri Dump Truck Association

convention held in February 2009.[33]  Although Summit only sold a single MAC trailer in

Utility Trailer's dealership area during the effective dates of the Dealer Agreement (and

indeed, Summit had purchased that trailer from Transwest Trailers, LLC, not directly from

MAC), the fact remains that MAC actively supported Summit's attempts to market and sell

MAC products in Utility Trailer's exclusive area.

Third, Utility Trailer presented evidence that in 2009, one of its customers, Tom

Peace, requested that Utility Trailer perform certain warranty work on a MAC trailer he had

purchased from Utility Trailer.  MAC told Utility Trailer that the requested work was not

under warranty, so Utility Trailer was unable to do the work.  Subsequently, though, Summit

representatives and Mr. Conny personally visited with Mr. Peace,[34] and Mr. Conny advised

him the requested work would be covered under MAC's warranty and should be performed

---

[31]Trial Exh. 233.

[32]Trial Exh. 232.

[33]Trial Exhs. 202, 229, 260; Testimony of Mr. Bowe.

[34]Mr. Conny testified that he and representatives from Summit had dinner with Mr. Peace.

by Summit.[35]  Again, viewing this evidence in Utility Trailer's favor, a reasonable juror could infer that MAC was favoring Utility Trailer's competitor with the intent of injuring Utility Trailer.

 Thus, after reviewing the record in the light most favorable to Utility Trailer, the court holds that "all the evidence does not clearly indicate that [MAC's] behavior was not malicious, as would be required to support [MAC's] motion for judgment as a matter of law."[36]

2.      Evidence that Summit Acted with Malice

Again, a close call exists as to whether the evidence supported the jury's finding that Summit acted with actual evil-mindedness or specific intent to injure Utility Trailer.  As with

---

[35]Defendants note that Mr. Bowe, the branch manager of the Kansas City Summit dealership, testified that he told Mr. Peace that Summit would do what it could to assist him with his trailers and that this offer was actuated by his belief that Utility Trailer was not addressing Mr. Peace's problem, not by a desire to harm Utility Trailer.  While this evidence may support a finding that *Summit* did not act with malice, it does not address the intentions of *MAC*, the party that refused Utility Trailer's request to cover the work under warranty.

[36]*Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1237 (10th Cir. 2006).  The court notes, however, that it attributes no weight to certain evidence advanced by Utility Trailer in its brief as supporting a finding of malice.  First, the fact that MAC sent the April 14, 2008, letter attempting to terminate the Dealer Agreement is of no consequence.  The court cannot conceive of how this business letter could demonstrate an attempt to injure by MAC.  The court further does not find malice in the fact that, in March and April 2010, MAC refused to give Utility Trailer price quotes for MAC trailers.  This occurred after the dealership relationship between MAC and Utility Trailer had been terminated by the October 30, 2009 letter, and it therefore seems entirely logical that MAC would no longer permit Utility Trailer to sell MAC products.

MAC, however, the court cannot say that the evidence could not be construed to support a finding of malice on the part of Summit. The following evidence supports the jury's verdict.

First, the jury could reasonably infer that Summit knew that MAC had a dealer agreement with Utility Trailer which provided that Utility Trailer would be the only authorized MAC dealer in the Kansas City metropolitan area. Mr. Hallas testified that he informed Mr. R. Eidsness that because MAC had an existing dealer in Missouri, he was unsure whether Transwest Trailers, LLC, would be able to have a dealership in Kansas City, Missouri.[37] As noted above, Mr. Hallas later emailed Mr. R. Eidsness asking for a "firm date" on Summit's Kansas City store because MAC had to "issue a cancellation letter to the other dealer with a 30-day notice."[38] Additionally, Mr. Rowland testified that when he was working for Summit/Transwest Trailers, LLC, in early 2008, Mr. G. Eidsness told him that he was being sent to the Kansas City area to sell MAC products because Utility Trailer "is broke and does not know it."[39]

Second, the evidence could be construed to show that, despite this knowledge, Summit established a MAC dealership in Kansas City, Missouri, and began attempting to sell MAC

---

[37]Doc. 205 at 39.

[38]Trial Exh. 222.

[39]The court notes that the record also contains evidence that Summit did *not* know Utility Trailer had been granted an exclusive dealership area. Mr. G. Eidsness testified that he had no knowledge that the Dealer Agreement granted Utility Trailer an exclusive dealership area. Doc. 210 at 80–81. And Mr. Conny testified that he could not recall whether he informed Transwest Trailers, LLC/Summit that it could not be an authorized dealer in the Kansas City area because Utility Trailer had been made the exclusive dealer in that area. It was for the jury to decide this factual discrepancy.

products in the Kansas City area during a time period when the Utility Trailer-MAC Dealer Agreement was in effect. Mr. Rowland testified that he solicited customers using a Summit business card.[40] As early as June 23, 2008, Mr. Rowland requested a price quote from MAC on a trailer that Scott Heller was interested in purchasing in Kansas City.[41] Mr. Elison also testified that he made sales calls in the Kansas City area on behalf of Summit in July 2008.[42] Mr. Elison spent a week in Kansas City talking to potential customers and "just getting the Summit name out there." He passed out Summit business cards. He attempted to sell MAC trailers and followed-up on calls that Mr. R. Eidsness had made earlier in the month.[43] Finally, documentary evidence indicated that in June and July 2008, Summit applied for various licenses from the state of Missouri and the city of Kansas City, Missouri, representing that it was selling MAC trailers and listing its dealership location as Kansas City, Missouri.[44]

---

[40]*See* Trial Exh. 224.

[41]Trial Exh. 279; Testimony of Mr. Rowland.

[42]Portions of Mr. Elison's video deposition were played at trial and are on file as doc. 206.

[43]Doc. 211 at 101.

[44]Trial Exhs. 207, 208, 300. Defendants contend that there was no evidence presented at trial that Summit held itself out as an authorized MAC dealer. However, in addition to these license applications, there was evidence that Mr. Elison and Mr. Rowland distributed Summit business cards depicting the MAC logo, and evidence that there were MAC trailers parked on Summit's dealership lot. Moreover, Mr. G. Eidsness testified that Summit represented to the public that it was a MAC dealer. The jury could have reasonably inferred from this that Summit had held itself out as an authorized MAC dealer.

In reviewing the evidence as a whole as presented to the jury during trial in a light most favorable to Utility Trailer, and indulging Utility Trailer all reasonable inferences that can be drawn from the trial record, the court finds that Utility Trailer has met its evidentiary burden, although just barely so, to prove it is more probably true than not true that Summit acted with an intent to injure Utility Trailer. The malice element of Utility Trailer's tortious interference with prospective contracts claim was satisfied.

B.    Evidence that No Competitor Privilege Exists

Defendants next assert that they are entitled to judgment as a matter of law on Utility Trailer's tortious interference with prospective business expectancy or relationship claims because Utility Trailer failed to produce sufficient evidence that defendants' actions were not protected under the previously mentioned competitor privilege. Specifically, defendants contend that Utility Trailer failed to offer substantial evidence that defendants employed wrongful means when competing with Utility Trailer. As explained in detail below, establishing "wrongful means" is a more difficult hurdle than establishing "malice." Thus, although the court has held Utility Trailer presented sufficient evidence to support the malice element of its tortious interference with prospective business expectancy or relationship claims, that holding does not decide the issue of whether Utility Trailer presented sufficient evidence to support the "absence of privilege" element of those claims.

"Kansas recognizes that 'not all interference in present or future contractual relations is tortious. A person may be privileged or justified to interfere with contractual relations in

certain situations.'"[45]  In *DP-Tek*, the Tenth Circuit held that Kansas would adopt the business competitor privilege set out in Restatement (Second) of Torts, § 768.[46]  Under that privilege, as the court instructed the jury,[47] competitors of a plaintiff cannot be held liable for tortious interference with a prospective business relationship if:

(a) the relation concerns a matter involved in the competition between the actor and the plaintiff;

(b) the actor does not employ wrongful means;

(c) its action does not create or continue an unlawful restraint of trade; and

(d) its purpose is at least in part to advance its interest in competing with the plaintiff.[48]

Defendants assert that they were competitors of Utility Trailer, as Utility Trailer's owners, Leon Geis and Christopher Geis, conceded at trial.[49]  Defendants further assert that they are protected from liability by the competitor privilege because Utility Trailer failed to

---

[45]*DP-Tek, Inc. v. AT&T Global Info. Solutions Co.*, 100 F.3d 828, 832 (10th Cir. 1996) (quoting *Turner*, 722 P.2d at 1115).

[46]*Id.*

[47]Jury Instruction No. 16.

[48]Restatement (Second) of Torts § 768 (cited in *D-P Tek*, 100 F.3d at 831).

[49]Utility Trailer does not dispute that both Summit and Mac were competitors of Utility Trailer for the sale of trailers in the Kansas City metropolitan area.

present evidence from which a reasonable jury could have concluded that the four-factor test of § 768 was not met.[50]

As an initial matter, the court must address whether the competitor privilege was properly at issue in this case. Utility Trailer argues that defendants did not assert the competitor privilege as an affirmative defense in the final pretrial order (doc. 81) and should therefore not be permitted to rely upon it post-trial. The court finds no merit in Utility Trailer's position. Defendants did assert as a defense in the pretrial order that each one's conduct was "legally justified."[51] The competitor privilege has been recognized as essentially a subset of the justification defense. In *Turner*, the Supreme Court of Kansas stated "in the area of interference with prospective contractual relations the terminology of privilege, proper vs. improper, and justification are used interchangeably with no overwhelming preference for any term."[52] The Kansas court then adopted the Restatement (Second) of Torts § 767, which "considers the subject more in the light of what conduct is improper when tortious interference with a prospective contractual relation is alleged rather than in the terms of privilege or justification."[53] Relying on *Turner*'s adoption of § 767, the Tenth Circuit in *DP-Tek* held that Kansas would also adopt § 768, which explicitly sets forth

---

[50]*See DP-Tek*, 100 F.3d at 836 (placing "the burden of overcoming the justification or the privilege on the plaintiff").

[51]Doc. 81 at 26 & 27.

[52]*Turner*, 722 P.2d at 1116.

[53]*Id.*

the competitor privilege. The Tenth Circuit recognized that § 767 "is the general balancing test applicable in tortious interference claims," and that §§ 768–773 illustrate the specific applications of the factors in § 767 to certain types of fact patterns.[54] Thus, because defendants asserted justification as a defense in the pretrial order, the court finds that the competitor privilege was properly placed before the jury at trial and is now properly before the court in defendants' motion for judgment as a matter of law.

Turning now to the merits of defendants' competitor privilege argument, the court notes that Utility Trailer attempted at trial to prove the absence of privilege by focusing on subsection b of the four-factor test—whether defendants employed wrongful means. The Tenth Circuit has interpreted the wrongful means element to require "independently actionable conduct."[55] Independently actionable conduct refers to "means that are intrinsically wrongful—that is, conduct which is itself capable of forming the basis of liability of the actor."[56] Such independently actionable conduct includes such conduct as "'physical violence, fraud, civil suits, and criminal prosecutions.'"[57] However, "competitive conduct which is not independently actionable does not become actionable because it

---

[54]*DP-Tek*, 100 F.3d at 832.

[55]*Id.* at 833, 835.

[56]*Id.* at 834 (quoting *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1507 (8th Cir. 1992)); *see also IT Network, Inc. v. Shell*, 21 F. Supp. 2d 1280, 1283 (D. Kan. 1998); *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1277 (D. Kan. 1998).

[57]*DP-Tek*, 100 F.3d at 833 (quoting *Occusafe, Inc. v. EG &G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir. 1995)). The court so instructed the jury in Instruction No. 16.

interferes with another's prospective contractual relations."[58]  Thus, although the Tenth

Circuit and Kansas courts have not addressed this issue, it appears clear the standard for

establishing wrongful means to defeat the competitor privilege (i.e., "independently

actionable conduct") is more difficult to meet than the standard for establishing that

defendants acted maliciously (i.e., "actual evil-mindedness or specific intent to injure").

The issue before the court, then, is whether the record, when viewed in the light most

favorable to Utility Trailer, contains evidence upon which the jury could have properly

determined that defendants' actions amounted to independently actionable conduct.  Utility

Trailer asserts that defendants' conduct was wrongful because defendants willfully violated

the exclusive-dealership-area provision of the Dealer Agreement between MAC and Utility

Trailer.  According to Utility Trailer:

> Since the Dealer Agreement precluded another dealer from establishing a
> dealership within Utility Trailer's territory, the actions of Summit and MAC
> to establish Summit as a seller and marketer of MAC products in Kansas City,
> Missouri (while purporting to evade the terms of the Utility Trailer-MAC
> Dealer Agreement by not entering into an express dealer agreement
> themselves) was an independent wrong and sufficient grounds for imposition
> of liability.[59]

Utility Trailer asserts that defendants used deceit and false pretense to establish the Kansas

City Summit dealership.  Utility Trailer further asserts that defendants' statements to

---

[58]*Classic Commc'ns., Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 922 (D. Kan. 1997).

[59]Doc. 253 at 10.  Utility Trailer also asserts that the competitor privilege does not apply when parties are contractually obligated to one another.  Utility Trailer provides no support for this argument, and the court has found none.

Mr. Peace "regarding warranty work were not the giving of 'truthful information' but rather were attempts to interfere wrongfully with Utility Trailer's prospective business relationships."[60] Finally, Utility Trailer submits that MAC's refusal to provide Utility Trailer with price quotes was evidence of the wrongful means employed by defendants.

The problem with Utility Trailer's argument is that Utility Trailer fails to address the "independently actionable conduct" standard required to establish wrongful means. Utility Trailer does not explain how or why any of the above-listed conduct of defendants could form the basis of independent liability. To the extent Utility Trailer advanced other independent claims against defendants based on the above-listed conduct, the jury rejected those claims.[61] Because none of the allegedly wrongful acts asserted by Utility Trailer rise to the level of independently actionable conduct,[62] the court must conclude that there was no

---

[60]*Id.* at 11.

[61]The court does not perceive Utility Trailer to be asserting breach of contract or tortious interference with an existing contract as bases for independent liability. But, were this Utility Trailer's argument, it would fail because the jury returned a verdict for MAC on Utility Trailer's breach of contract claim and for Summit on Utility Trailer's tortious interference with contract claim. As an aside, the court notes the record clearly would have supported a finding of breach of contract, had the jury reached that conclusion.

[62]*See, e.g., IT Network, Inc. v. Shell*, 21 F. Supp. 2d 1280, 1283 (D. Kan. 1998) (dismissing claim of tortious interference with prospective business relations because the wrongful acts asserted by the plaintiff, including the wrongful use of trade secrets and interference with employment contracts, "would not independently subject the defendants to liability to the plaintiff"); *Classic Commc'ns.*, 956 F. Supp. at 922 (dismissing claim for tortious interference with prospective business relationship where plaintiff's allegations that (1) defendant knowingly and intentionally made false and misleading comments about plaintiff and (2) interfered with plaintiff's attempts to obtain financing, even if true, did not support independently actionable claims).

legally sufficient basis on which the jury could have found the absence of a competitor privilege.

Because Utility Trailer failed to present evidence from which a reasonable jury could conclude that all elements of its tortious interference with a prospective business advantage or relationship claims were satisfied, defendants' renewed motion for judgment as a matter of law on these claims is granted. Judgment will be entered accordingly.

C.    Defendants' Remaining Arguments

Given the court's finding that defendants are entitled to the entry of judgment in their favor based on the lack of evidence to support the absence of a competitor privilege, the court technically need not reach defendants' remaining arguments for the entry of judgment. However, for the sake of completeness (and as a matter of caution should the above holding be reversed on appeal), the court will briefly address defendants' arguments regarding (1) whether MAC is entitled to judgment as a matter of law because the evidence did not establish that MAC committed a tort and damages separate from those alleged in Utility Trailer's breach of contract claim, and (2) the propriety of the jury's award of damages for lost profits. The court finds no merit in either of these arguments.

First, defendants rely on *Pizza Management, Inc. v. Pizza Hut, Inc.*,[63] to make the assertion that MAC is entitled to judgment as a matter of law on Utility Trailer's claim of tortious interference with a prospective business expectancy or relationship because Utility

_____

[63]737 F. Supp. 1154, 1161–1163 (D. Kan. 1990).

Trailer did not establish the existence of a tort or damages arising from any conduct other than conduct asserted to support Utility Trailer's breach of contract claim. The court finds *Pizza Management* wholly inapplicable to the instant situation. In *Pizza Management*, defendants brought a motion to dismiss plaintiffs' tortious interference with prospective business advantage claim because it was based solely on the asserted breach of contractual duties and did not assert any injuries beyond those flowing from the alleged breach of contract.[64] Although the district court recognized that "Kansas law allows a claim for tortious interference with prospective business advantage even when the alleged predicate act of misconduct is a defendant's breach of a contract," it dismissed the tortious interference claim because the claim did not assert injuries other than those arising from the alleged breach of conduct.[65]

The facts in this case are different. Utility Trailer's tortious interference with a prospective business advantage or relationship claim against MAC alleged conduct that went further than conduct alleged to show MAC's breach of contract. For example, the breach of contract claim was premised on allegations that MAC authorized or licensed Summit to sell MAC products in Utility Trailer's exclusive dealership area.[66] But Utility Trailer's tortious interference claim was based on MAC's actions to cause Utility Trailer's existing and potential customers to purchase and service MAC products through Summit and the

---

[64]*Id.* at 1160, 1163.

[65]*Id.* at 1163.

[66]*See* Pretrial Order, doc. 81, at 15.

allegation that MAC acted maliciously.[67]  Moreover, the jury determined that Utility Trailer sustained $87,500 in damages as a result of MAC's actions that amounted to tortious interference with Utility Trailer's prospective business relationships, but not as a result of MAC's actions that allegedly amounted to breach of contract.  The court therefore denies MAC's request for judgment as a matter of law on this ground.

Second, defendants argue that the evidence presented at trial does not support the jury's award of damages for lost profits sustained by Utility Trailer because the Dealer Agreement was terminable at will upon thirty-days notice, making any expectation by Utility Trailer of lost profits beyond thirty days (i.e., November 29, 2009) not reasonable.  The court finds no support for this argument.  Defendants made a similar argument at trial—that damages should be limited by the thirty-day notice provision—but that argument was clearly rejected by the jury in their damages award.  Utility Trailer presented the expert testimony of Jay R. Hill, who opined on Utility Trailer's likely lost profits as a result of defendants' actions.  Utility Trailer also presented testimony from two potential customers that sought to purchase MAC trailers from Utility Trailer after November 29, 2009.  The court finds that the evidence supports the jury's finding that Utility Trailer suffered damages after the thirty-day notice period in the Dealer Agreement, that these damages were reasonably contemplated by Utility Trailer, and that the damage awards were reasonable.  MAC's request for judgment as a matter of law on this ground is denied.

---

[67]*Id.* at 19–20.

IV.  Utility Trailer's Motion for Judgment as a Matter of Law and New Trial

As noted above, the jury rejected Utility Trailer's claims against MAC for breach of contract and violation of the KDMLA.  The jury also rejected Utility Trailer's claim against Summit for tortious interference with an existing contract.  In its post-trial motion, Utility Trailer asserts it is entitled to judgment as a matter of law on the KDMLA claim based on the facts contained within the four corners of the Dealer Agreement.  Utility Trailer also argues a new trial is warranted on its claims of breach of contract against MAC and tortious interference with contract against Summit because defendants willfully failed to produce a document during discovery.  The court will address each argument in turn.

A.       KDMLA Claim

Utility Trailer asserts that the KDMLA governed its relationship with MAC.  The KDMLA requires vehicle dealers[68] selling vehicles in Kansas to have a franchise agreement with the manufacturer of the vehicle.[69]  Section 8-2414 of the KDMLA sets forth a number of requirements that must be met before a manufacturer may cancel or terminate the franchise agreement.[70]  In the event of cancellation or termination, § 8-2414 places additional requirements on the manufacturer, such as repurchasing certain inventory and paying the

---

[68]Under K.S.A. § 8-2401(a), (h), a "vehicle dealer" includes any person who is in the business of buying or selling trailers.  Defendants do not dispute that Utility Trailer is a vehicle dealer.

[69]K.S.A. § 8-2404(q); *see also Doonan Trailer Corp. v. Am. Trailers, Inc.*, No. 61161, 798 P.2d 972, 1988 Kan. App. Lexis 370, at *2 (Kan. Ct. App. May 27, 1988) ("[T]he requirement of a franchise agreement applies to sales of trailers.").

[70]K.S.A. § 8-2414(a), (e).

dealer the fair rental value of its place of business.[71]  Utility Trailer's claim against MAC

under the KDMLA asserted that MAC cancelled the Dealer Agreement without following

the provisions of § 8-2414.  As part of its claim, Utility Trailer asserted that the Dealer

Agreement constituted a franchise agreement.

At trial, the court instructed the jury on the definition of a franchise agreement, as set

forth in § 8-2401(w) of the KDMLA.[72]  In completing its verdict, the jury determined that

the Dealer Agreement was not a franchise agreement under the KDMLA.  Thus, judgment

was entered for MAC on Utility Trailer's KDMLA claim.  Utility Trailer now asserts that the

jury's verdict on this claim cannot be supported because, as a matter of law, the Dealer

Agreement satisfied the KDMLA definition of a franchise agreement.

As an initial matter, even assuming for the sake of discussion that the KDMLA

provides a private right of action,[73] the court must address whether Utility Trailer's claim

---

[71]K.S.A. § 8-2414(f).

[72]Instruction No. 17.

[73]There is not any caselaw that directly addresses whether a private right of action
exists under the KDMLA.  In general, Kansas courts apply a two-part test to determine
whether a statute creates a private right of action.  *Pullen v. West*, 92 P.3d 584, 594 (Kan.
2004).  First, the plaintiff must show the statute was designed to protect a specific group of
people, rather than the public at large.  *Id.*  Second, the legislative history of the statute must
indicate that the legislature intended to create a private right of action.  *Id.*  Under the first
part of the test, the parties disagree over whether the KDMLA was designed to protect the
general public or only vehicle dealers operating under franchise agreements with vehicle
manufacturers.  The act's "declaration of public policy" section, if anything, muddies this
issue, rather than clarifies it—on the one hand, it states that it is the "policy of this state to
provide for fair and impartial regulation of those persons engaged in manufacturing,
distributing or selling vehicles;" on the other hand, it states it is the further "policy of this
state to protect the public interest in the purchase and trade of vehicles."  K.S.A. § 8-2402.

under § 8-2414 is properly before this court given that Utility Trailer failed to pursue its administrative remedies before bringing suit. Under Kansas law, if a plaintiff has an administrative remedy for its claim of damages, that remedy "must ordinarily be exhausted before a litigant may resort to the courts."[74] Only if "no administrative remedy is available or if it is inadequate to address the problem in issue," is exhaustion not required.[75] Where a litigant has failed to exhaust available administrative remedies, the court lacks subject matter jurisdiction over the matter.[76]

Section 8-2414 specifically provides that a vehicle dealer may file a complaint with the Kansas Director of Motor Vehicles challenging the termination of a franchise

---

Under the second part of the test, the parties have presented no evidence of the legislative history of the KDMLA. Rather, they each cite different sections of the act that could be read, alternately, as creating only injunctive judicial relief (but not civil damages), *see* K.S.A. § 8-2413(a), and as creating permissive (but not required) relief by the director of motor vehicles with a right of appeal to the courts, *see* K.S.A. §§ 8-2404 & 8-2411. Because, as discussed below, the court finds that Utility Trailer's KDMLA claim must be dismissed for failure to exhaust administrative remedies, the court need not enter the thicket of unraveling these issues to determine whether a private right of action exists under the KDMLA.

[74]*W. Kan. Exp., Inc. v. Dugan Truck Line, Inc.*, 720 P.2d 1132, 1134 (Kan. Ct. App. 1986); *see also Sandlin v. Roche Labs., Inc.*, 991 P.2d 883, 888 (Kan. 1999) ("The doctrine of exhaustion of administrative remedies dictates that a remedy before an administrative agency provided by law must be sought and completed before courts will act.") (internal quotations and citations omitted).

[75]*W. Kan. Exp.*, 720 P.2d at 1134.

[76]*Nichols v. Kan. Political Action Comm.*, 11 P.3d 1134, 1138 (Kan. 2000); *see also Sandlin*, 991 P.2d at 889 (holding that district court was without jurisdiction to consider an employment discrimination case where plaintiff did not exhaust administrative remedies).

agreement.[77] It directs, "Upon a complaint being filed, the director shall promptly set the matter for public hearing, in accordance with K.S.A. § 8-2411 . . . for the purpose of determining whether there has been a violation of K.S.A. § 8-2410 [unfair termination of a franchise agreement] . . . or whether good cause exists for . . . termination."[78] The referenced § 8-2411 states that the hearing "shall be conducted in accordance with the provisions of the Kansas administrative procedure act," with the right of appeal "to the district court in accordance with the provisions of the act for judicial review and civil enforcement of agency actions."[79]

Utility Trailer ignored the administrative remedies specifically set forth in § 8-2414, failed to file a complaint with the Director, and instead asserted its KDMLA claim for the first time in this lawsuit.[80] Because Utility Trailer did not exhaust its administrative remedies before bringing this claim, the court has no jurisdiction to consider it.[81] Although it is

---

[77]K.S.A § 8-2414(b).

[78]*Id.*

[79]K.S.A. § 8-2411(a), (c).

[80]Although Utility Trailer did file an administrative complaint after receiving the (later-revoked) April 14, 2008, termination letter, it appears that the parties voluntarily dismissed that administrative action. It is uncontroverted that Utility Trailer failed to file *any* complaint with the Director of Motor Vehicles after receiving the October 30, 2009, termination letter. There is no question that Utility Trailer's KDMLA claim is not an appeal of an administrative decision.

[81]The court notes that *Doonan Trailer*, on which Utility Trailer so heavily relies, did not address the exhaustion of administrative remedies requirement.

unfortunate the court did not address the matter of its jurisdiction prior to trial,[82] "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[83]  Accordingly, the court dismisses Utility Trailer's KDMLA claim and denies Utility Trailer's motion for judgment as a matter of law.[84]

B.    Defendants' Discovery Violation

        Utility Trailer next argues that it is entitled to a new trial on its claims of breach of contract against MAC and tortious interference with contract against Summit.  The sole basis of Utility Trailer's argument is defendants' failure to produce during discovery the letter from MAC that Summit submitted with its application for a Missouri motor vehicle dealer

---

[82]The issue of exhaustion of administrative remedies and the court's jurisdiction has never been raised by the parties.  Indeed, the first time that even the applicability of the KDMLA was raised was by defendants in a motion in limine.  There, the court ruled that the issues raised by defendants were "not evidentiary issues appropriate for resolution by an order in limine," and the court encouraged defendants to raise the matter as a motion for judgment as a matter of law.  Doc. 175 at 5.  It was not until the court had an opportunity to undertake a detailed analysis of the KDMLA post-trial that the court recognized the potential jurisdictional barrier.

[83]Fed. R. Civ. P. 12(h)(3).

[84]Were the court to address this matter on its merits, the result, as a practical matter, would be the same.  The KDMLA defines a franchise agreement as a contract by which (1) one party is granted the right to sell goods "under a marketing plan or system prescribed in substantial part by the other party" and (2) "the operation of the grantee's business pursuant to such agreement is substantially associated with the grantor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the grantor."  K.S.A. § 8-2401(w).  The jury found that the Dealer Agreement did not satisfy these elements of a franchise agreement.  The evidence supports the jury's finding.  Contrary to Utility Trailer's suggestion, the Dealer Agreement does not by its terms set out a marketing system prescribed in substantial part by MAC, nor does it dictate that Utility Trailer's business be substantially associated with the MAC logo or name.

license.  The (undisclosed) letter Summit submitted is dated July 15, 2008, and is addressed to Ryan Eidsness of Transwest Trailers, LLC, and Summit Truck Equipment, LLC.[85]  It can be read to grant both entities the non-exclusive license and right to sell MAC products.  The letter includes a signature block for Philip Bortz, MAC's vice president of sales and marketing, but it is unsigned.

Instead of the letter that Summit submitted with its license application, defendants produced during discovery a letter that is similar in all respects except that it does not reference Summit—it is addressed to Ryan Eidsness solely of Transwest Trailers, LLC, and only grants a license and right to sell MAC products to Transwest Trailers, LLC.[86]

Utility Trailer argues it was prejudiced by defendants' disclosure of the wrong letter because defendants took the position during trial that the submitted letter, because it was unsigned, did not constitute an agreement between MAC and Summit authorizing Summit as a MAC dealer.  Utility Trailer notes that the jury presented two questions to the court asking what weight to give unsigned letters; one of the questions specifically referenced Exhibit 300, the letter submitted by Summit to the state of Missouri.[87]  According to Utility Trailer, "[h]ad the document been produced during discovery, it would have been the subject of deposition questioning of Bortz to establish that the letter was his, had been signed or approved by him, and/or authorized by him on behalf of MAC to be used accordingly by

---

[85]Trial Exh. 300.

[86]Trial Exh. 209.

[87]Doc. 248, Attachment 5 (jury questions).

Summit."[88]  Utility Trailer further asserts, without any legal support, that the court "erred in declining to instruct the jury, in response to the jury's questions, that the same weight should be given to all exhibits, whether signed or unsigned."[89]

The misconduct of counsel or a party in failing to produce a requested document prior to trial justifies a new trial if that misconduct prejudiced the adverse party.[90]  "A showing of prejudice, however, is essential."[91]  "A new trial is not to be granted simply as a punitive measure to punish the misconduct of counsel."[92]

The court agrees with Utility Trailer that the "Summit" version of the subject document should have been produced by defendants.  But Utility Trailer has not established prejudice from the non-disclosure.  First, as conceded by Utility Trailer's counsel, he had obtained a copy of the letter submitted by Summit with its application directly from the Missouri Department of Revenue weeks before trial began.  Thus, Utility Trailer had sufficient time to file a motion seeking to reopen the deposition of Mr. Bortz or seeking to

---

[88]Doc. 252 at 6.  Despite Utility Trailer's suggestions to the contrary, nothing suggests that Mr. Bortz signed any version of the letter.  The two versions of the letter before the court are identical in the fact that neither is signed.  Thus, Utility Trailer's arguments that defendants should have "produced a signed copy of the letter" and that the court "should order a new trial at which there will be no doubt that the Bortz letter was authorized and signed by Bortz," lack credence.

[89]*Id.* at 7.

[90]*Ryder v. City of Topeka*, 814 F.2d 1412, 1424 (10th Cir. 1987).

[91]*Id.*

[92]*Id.* at 1425.

limit the use of the document pursuant to Fed. R. Civ. P. 37(c)(1).  However, Utility Trailer failed to raise the issue of the nondisclosure prior to trial.

Second, Utility Trailer certainly could have sought to call Mr. Bortz as an in-person witness at trial and attempted to establish that the letter had been approved or authorized by him on behalf of MAC.  Utility Trailer chose not to do so.  Similarly, Utility Trailer could have questioned Mr. Conny, the president of MAC, about the letter when it called him during its case-in-chief.  Again, Utility Trailer did not do so.  In short, despite Utility Trailer's knowledge weeks before trial of the document submitted with Summit's application (and the non-disclosure of such document by defendants), Utility Trailer made no timely attempt to explore the circumstances surrounding the subject letter either before or during trial.  There is simply no evidence that Utility Trailer was prejudiced by the nondisclosure.[93]

To the extent Utility Trailer is arguing that it is entitled to a new trial because the court declined to instruct the jury, in response to their questions, "that signed and unsigned letters should be afforded equal weight,"[94] the argument is flatly rejected.  Utility Trailer has presented no support for the proposition that the law assigns equal weight to signed and

---

[93]*See Ryder*, 814 F.2d at 1426 (upholding the denial of a motion for new trial where a document was not disclosed until trial; finding no prejudice because the moving party could have recalled witnesses to testify about the document).

[94]Doc. 257 at 4.

unsigned letters. To the contrary, caselaw indicates that it is for the jury to determine the weight to give unsigned documents.[95]

Utility Trailer's request for a new trial on its claims of breach of contract and tortious interference with contract is denied.

## V. Conclusion and Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Defendants' renewed motion for judgment as a matter of law (doc. 250) is granted. Judgment shall be entered in favor of MAC and Summit on Utility Trailer's tortious interference with a prospective business expectancy or relationship claims.

2. Utility Trailer's motion for judgment as a matter of law and/or new trial (doc. 252) is denied.

IT IS SO ORDERED.

Dated this 16th day of August, 2010, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[95] *See United Intern. Holdings, Inc.*, 210 F.3d 1207, 1227–28 (10th Cir. 2000); *Day Adver., Inc. v. Parker*, 39 F.3d 1191, 1994 WL 596484, at *4 (10th Cir. Nov. 1, 1994); *see also Welch v. Workman*, 607 F.3d 674, 705 (10th Cir. 2010) ("[T]he jury must be the body that decides the weight or effect given to the evidence.").